IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANEIKA S. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:09-CV-02302-P |
| | § | |
| SOUTHWESTERN BELL | § | |
| TELEPHONE CO., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Now before the Court is Defendant Southwestern Bell Telephone Co.'s ("SWBT") Motion for Summary Judgment, filed on January 17, 2011. (Doc. No. 18.) Plaintiff Shaneika S. Smith ("Smith") filed a Response and Motion to Continue on February 25, 2011. (Doc. No. 33.) On March 8, 2011, SWBT filed a Reply (Doc. No. 35) as well as Objections to Plaintiff's Response Appendix. (Doc. No. 36.)

After reviewing the parties' briefing, the evidence, and the applicable law, the Court GRANTS Defendant's Motion for Summary Judgment.

### I.  Background

From July of 2000 to October 30, 2007, Smith worked as a customer service representative for SWBT. (Smith Dep. 27:13-21.) Smith's job entailed answering the phones, going over the customer's bills, and making sales. (*Id.* 29:15-20.) As part of her job duties, Smith was trained on how to deal with difficult customers. (Stephenson Decl. ¶ 3.) When a customer became too difficult, Smith was trained to transfer the call to either a service representative dedicated to dealing with difficult customers, or to her sales coach manager. (*Id.*)

Prior to the October 2007 incident discussed below, Smith had never been disciplined by SWBT. (Smith Aff. 1 ¶ 2.)

Smith had been taking approved, intermittent FMLA leave for an undisclosed serious health condition that was not disputed by SWBT. (Smith Aff. 1 ¶ 2.) Smith alleges that her manager, Michael Thompson, would refer to her as an "FMLA queen," and that she was ridiculed on a weekly basis because she took her FMLA leave. (*Id.* 1 ¶ 8.) At one point, Smith states that Thompson refused to give her a pin number necessary to apply for higher level job, but told her that if she came to work for three months without taking any FMLA leave she could have it. (*Id.* 1 ¶ 10-11.) Smith contends that she made numerous attempts to meet with Cheryl Stephenson ("Stephenson"), the Center Sales Manager, to complain about the mistreatment from Thompson, but Stephenson never responded. (*Id.* 2 ¶ 12.)

On October 9, 2006, Smith received an email from Kevin McDorman[1] addressed to various employees at SWBT, including Thompson. (Pl.'s App. Ex. 6.) This email stated that attendance numbers were down, and that if anybody knew of an employee abusing their FMLA leave that those individuals should be reported. (*Id.*) This email stated "[p]lease, please, please we have to get to work, even if we are not feeling well." (*Id.*) Smith said this email made her fearful that she would lose her job, because she was taking leave through the FMLA. (Smith Aff. 2 ¶ 15.)

In October of 2007, Smith received a call from an upset customer. During the course of that call, the customer called Smith a "crazy bitch" (Smith Dep. 64:23; *see also* Def.s' Audio Recording of October 2007 Customer Call ("Audio Recording")) and informed Smith she was going to make sure Smith lost her job. (Smith Dep. 63:20-22; Audio Recording.) While

---

[1] Neither party identifies the position Kevin McDorman held at SWBT.

transferring the call to her supervisor, Smith made the statement "she's crazy" in reference to the customer, not realizing the call was not on mute. (*Id.* 65:10-11.) The customer overheard what Smith said and was angry. (*Id.* 65:18-21.)

After this incident, an investigation was conducted wherein Thompson stated that he didn't respect how Smith treated the customer. (Def.'s Mot. Summ. J. App. 39, Stephenson Dec. Ex. C.) Smith was suspended without pay on October 30, 2007, on the basis that she violated the Code of Business Conduct. (*Id.* Ex. D.)

After a hearing before the Director of the Call Center, the termination of Smith's employment was authorized on December 11, 2007. (*Id.* App. 45-47, Ex. F.) Smith filed a new grievance, and was provided a formal grievance hearing before Alisa Thomas, Associate Director of Human Resources, on December 14, 2007. (*See* Def.'s Mot. Summ. J. App. 52-53, Jennings Decl. Ex. A.) Thomas offered Smith a "Last Chance Agreement," wherein Smith would resume her employment without back pay, but could be terminated for any infraction during a 36 month period. (Smith Dep. 83:11-84:11.) Smith declined that agreement. (*Id.* 84:6-7.) SWBT alleges that Smith then appealed Thomas's decision before Janita Jennings, the Lead Labor Relations Manager. (Def.'s Mot. Summ. J. App. 55-57, Ex. B.) SWBT argues that Jennings offered to reduce the term of the probationary period to 18 months but Smith declined the agreement. (*Id.*) In Smith's Deposition and Affidavit, she asserts that the last offer she was given was for 36 months. (Smith Dep. 84:9-11; *see also* Smith Aff. ¶¶ 26-28.) However, in her affidavit Smith additionally states that she was never offered probation for less than 24 months. (Smith Aff. ¶ 29.) Smith does not state by whom or under what circumstances she was given the option of a 24 month probation.

## II. Legal Standard & Analysis

### A. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Celotex*, 477 U.S. at 323. However, all evidence and reasonable inferences to be drawn there from must be viewed in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The party defending against the motion for summary judgment cannot defeat the motion, unless he provides specific facts demonstrating a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See id.* at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (citing *Celotex*,

477 U.S. at 324)). Further, a court has no duty to search the record for evidence of genuine issues. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### B. Motion for Continuance

In conjunction with filing her Response, Smith also moved for a continuance until the Court determined Smith's Motion for Leave to File Plaintiff's Motion to Extend Discovery Deadline. (Doc. No. 24.) The Honorable Judge Paul D. Stickney, United States Magistrate Judge, denied this Motion on March 23, 2011. (Doc. No. 39.) Accordingly, Smith's Motion for a Continuance is DENIED.

### C. Objections

SWBT submitted to the Court a series of objections to evidence submitted in Smith's Response to Defendant's Motion for Summary Judgment. The Court overrules the majority of these objections on the basis that the objections are without merit and/or the evidence objected to was not used by the Court in determining the Summary Judgment Motion.

In regard to the deposition of Smith, the Court finds that the objections were not vague and contained the proper foundation. In regard to Smith's Affidavit, the Court finds that the majority of these objections are overruled on the basis that they are proper opinion testimony of a lay witness. Fed. R. Evid. 701. However, the Court does find that the testimony regarding the alleged misconduct of the other employees should be stricken as there is no foundation that Smith had personal knowledge to testify to these incidents. (Smith Aff. ¶¶ 23, 24, 25) The evidence used by the Court in the Deposition of Stanley Ridley is proper lay witness testimony pursuant to Federal Rules of Evidence 701.

### D. FMLA

Smith's Complaint alleges that her termination from SWBT was in retaliation for her taking FMLA leave. (*See* Original Complaint Section V.) Under the FMLA, an eligible employee is permitted to take up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). SWBT does not dispute that Smith was an eligible employee under the FMLA, rather SWBT contends that she was fired for a legitimate, non-discriminatory reason.

A plaintiff can prove FMLA discrimination under the FMLA either through direct evidence or the *McDonnell Douglas* burden-shifting framework. *Fabela v. Socorro Indep. School. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). To make a prima facie case of retaliation under the FMLA utilizing the *McDonnell Douglas* burden-shifting framework, the plaintiff must show that: (1) he or she was protected under the FMLA; (2) that he or she suffered an adverse employment decision; and (3) that she he or she was treated less favorably than an employee who had not required leave under the FMLA or the adverse decision was made because he or she took FMLA leave. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). (citation omitted). Once the plaintiff makes a prima facie showing, the burden shifts to the defendant "to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." *Id.* If the defendant makes such a showing, the plaintiff must show by a preponderance of the evidence that the defendant's legitimate nondiscriminatory or nonretaliatory reason was a pretext for retaliation." *Id.*

Smith asserts that she has a prima facie case of retaliation because she (1) was protected under the FMLA; (2) suffered an adverse employment decision when she was terminated from

SWBT; and (3) was prohibited and ultimately terminated from her position because SWBT believed she was taking too much FMLA leave. SWBT does not challenge whether or not Smith has shown a prima facie case. Rather, SWBT jumps right to articulating a legitimate, non retaliatory reason for the termination, citing Smith's handling of the October 2007 customer call. (*See* Def.s' Audio Recording.) In Response, Smith does not argue against the customer call as not a legitimate, nondiscriminatory reason. Instead, Smith argues that her termination for the customer call was pretext for her taking FMLA leave.

Smith must show that SWBT's nondiscriminatory reason was pretext by a preponderance of the evidence. *Hunt*, 277 F.3d at 768. Smith has provided the Court with substantial evidence regarding Thompson's actions toward Smith taking FMLA leave. In her deposition, Smith alleges that in 2007 she asked Thompson for a pin number so that she could apply for a higher level job. (Smith Aff.1 ¶ 10.) Smith testified that Thompson refused to give her the pin number unless she came to work without taking any further FMLA leave for the next three months. (*Id.* 2 ¶ 11.) Smith additionally testifies that supervisors would often use the phrase "FMLA queens and kings" to describe employees taking FMLA. (Smith. Dep. 37:5-16.) However, Smith does not name any other supervisor by name except for Thompson, who Smith alleges would refer to her specifically as an "FMLA queen." (Smith Aff. 1 ¶ 8.)

While Smith has provided the Court with evidence of Thompson's discriminatory behavior, Smith has not provided the Court with evidence of any discriminatory intent of the supervisors who reviewed her appeal. There is testimony by Stanley Ridley ("Ridley"), Smith's Sales Coach Manager, who states in his deposition that Smith was "a great employee" (Ridley Dep. 7:11-17), but that upper management treated and disciplined those employees taking FMLA leave differently than those who did not take FMLA leave. (Ridley Dep. 28:7-23; *see also* 30:1-

15.) However, Ridley does not give names nor does he give specific examples of anyone being so treated. Without specifics, it is impossible to tell if Ridley's statements are based on fact, his own subjective impression, or mere rumor or to whom he is referring. Ridley's assertions are also tainted by the fact that he himself signed off on Smith's termination, as Ridley believed that her behavior handling the customer call constituted gross customer mistreat. (*Id.* 41:12-44:8; *see also* Def.'s Mot. Summ. J. App. 47, Stephenson Dec. Ex. F.) Further, Smith was not actually terminated from her position at SWBT. During the final course of her appeal she was offered her job back with a probationary period.[2]

While Smith asserts that supervisors treated those on FMLA differently, she provides the Court with no names and no substantive examples of individuals who were similarly situated but treated differently. Nor does Smith state which supervisors, with the exception of Thompson, treated similarly situated employees differently. Even if the probationary period could be considered an adverse employment action, Smith has provided the Court with no evidence that (1) the management that made the ultimate decision was influenced by or even knew of her FMLA leave or (2) that management was influenced by the alleged discriminatory actions of Thompson. When viewing this evidence, the Court is required to view it in the light most favorable to the non-moving party. However, the Court cannot make assumptions regarding evidence that is not presented to the Court. Smith has not raised a fact issue that SWBT's nondiscriminatory reason for the adverse employment action was mere pretext. Accordingly, SWBT's Motion for Summary Judgment is granted.

---

[2] Both parties agree Smith was offered her job back with a probationary period as a condition of her employment. However, the parties disagree on how much probation Smith was offered. Smith asserts she was only offered 36 months probation (Smith Dep. 84:9-11; *see also* Smith Aff. ¶¶ 26-28) but never less than 24 months. (Smith Aff ¶ 29.) SWBT asserts that they offered Smith 18 months probation which was declined. (Def.'s Summ. J. App. 55-57.)

...

## III.     Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Signed this 19th day of April, 2011.

JORGE A. SOLIS  
UNITED STATES DISTRICT JUDGE